IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:17-cv-792-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Benjamin McAllister applied for disability insurance benefits under Title II of the Social Security Act (the "Act") on February 1, 2016 and alleged a disability date of February 1, 2015. R. 154–56. The application was denied by hearing decision issued May 10, 2017. R. 12–24. The Appeals Council denied Plaintiff's request for review. R. 1–6. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) and 1348(c)(3). After careful scrutiny of the record and briefs, for the reasons explained below, the court concludes that the Commissioner's decision is to be AFFIRMED.

### **I. NATURE OF THE CASE**

McAllister seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law

and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment.

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is a limited one. The court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. § 405(g)). Thus, this court must find the Commissioner's decision to be conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584

n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The court also will reverse a Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42

3

U.S.C. §§ 1382(a) & 1382c(a)(3)(A)–(C). However, despite the fact that they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical, so claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3) & 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a) & 416.905(a). A person is entitled to disability benefits when he or she is unable to

> [e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920.

  (1)  Is the person presently unemployed?
  (2)  Is the person's impairment(s) severe?
  (3)  Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
  (4)  Is the person unable to perform his or her former occupation?
  (5)  Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.*

The burden of proof rests on the claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.* To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant still is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ either uses the Medical Vocational Guidelines (the "grids") or receives testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor independently can limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 47 years old at the time of the administrative decision and obtained an Associate degree in 2015. R. 36, 154, 187 & 844. Plaintiff has past relevant work in the armed forces as a Marine. R. 187–89, 297, 204 & 229. Plaintiff received a 100 percent disability rating from the Department of Veterans Affairs as of July 2015. R. 36 & 230–33.[1] In 2015 and 2016, Plaintiff attended college and studied network engineering. R. 844. He alleged that he could not perform any substantial gainful activity beginning on July 1, 2015 due to degenerative disc disease of the cervical and lumbar spine, sleep apnea, right shoulder impingement syndrome, bilateral carpal tunnel syndrome, and adjustment disorder with depression. R. 36, 154, 185–91, 205–13, 215–17 & 220–28.

In evaluating Plaintiff's application, the ALJ applied the five-step sequential evaluation process described above. R. 17–24. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2019. R. 17. And the ALJ found that he had not engaged in substantial gainful activity during the relevant period. R. 17. After reviewing the medical evidence and hearing testimony, the ALJ determined that Plaintiff's severe impairments included degenerative disc disease of the lumbar and cervical spine, obstructive sleep apnea, adjustment disorder with depression, right shoulder impingement syndrome, and carpal tunnel syndrome in the right, status post carpal tunnel

---

[1] The ALJ assigned the VA disability rating "little weight" because Plaintiff's complaints of debilitating pain and depression were not supported by the record evidence. R. 22. Although an ALJ is generally required to give a VA disability rating "great weight," there is no error where, as here, the ALJ "closely scrutinized the VA's disability decision and gave specific reasons for determining the VA's determination had little bearing" on Plaintiff's case. *Ostborg v. Comm'r Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015) (citing *Brady v. Heckler*, 724 F. 2d 914, 921 (11th Cir. 1984)).

6

release surgery. R. 17. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. 18. The ALJ evaluated Plaintiff's credibility and found that the objective evidence did not support his subjective complaints. R. 20–22. The ALJ then found that Plaintiff retained the RFC to perform a limited range of light work. R. 20. At step four, the ALJ determined, with the assistance of a VE, that Plaintiff was unable to perform his past relevant work. R. 22. However, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. R. 23. Thus, the ALJ found that Plaintiff was not disabled during the relevant period. R. 24.

## V. FACTS

The court adopts, in large part, the facts as set out in Plaintiff's brief pertaining to his medical history. *See* Doc. 13 at 3–7. In December 2014, shortly before the alleged onset date, McAllister sought treatment for lower back pain that radiated into his left leg. R. 487. He reported that the pain had been present for the past five months and ranged in severity from a one out of ten to a five out of ten. R. 487. He noted that he could walk about four miles, but that this exercise made his pain more intense. R. 487. He also stated that he had hip pain, especially when trying to run. R. 487. He was diagnosed with left piriformis syndrome. R. 488.

During 2015, McAllister received treatment for a right shoulder impairment. R. 416, 434, 445, 450 & 472–73. He reported increased pain and an occasional popping sensation when reaching overhead. R. 434 & 450. An MRI revealed that McAllister had a partial

7

high-grade tear of the right rotator cuff with AC joint arthritis. R. 448–49 & 465. There also was a probable tear of the superior labrum that extended into the adjacent biceps tendon. R. 449 & 465. In June 2015, McAllister underwent surgery to repair his rotator cuff and biceps tendon. R. 404. The next month he had revision surgery on his right biceps. R. 369. Follow-up notes reflect that McAllister was doing well in that he had a good range of motion in his shoulder and pain that was no more than a one or two out of ten in severity. R. 360–61, 378, 381 & 399.

In March 2016, Plaintiff had a consultative examination with Dr. Donna Fleitas, a licensed psychologist. R. 843–49. Plaintiff told the doctor that he was applying for disability due to depression, a mood disorder, and physical impairments. R. 843. Dr. Fleitas observed that McAllister was dressed and groomed appropriately and appeared to be his stated age. R. 847. He made good eye contact throughout the examination. R. 848. His memory was intact, and he did not have any perceptual disturbances. R. 848. McAllister did admit to thoughts of self-harm, but he denied any intent to act on those thoughts. R. 848. He also reported having "[s]uspiciousness with obsessive thoughts." R. 848.

Dr. Fleitas observed that McAllister was able to complete simple calculations and could repeat digits both forwards and backwards. R. 848. He could not identify similarities between different objects and could not appropriately interpret proverbs. R. 848. His fund of general information was adequate. R. 848. Dr. Fleitas noted that McAllister displayed adequate effort while providing background information and completing tasks. R. 848. She wrote that "[m]alingering, embellishment, and minimization were not indicated." R. 848.

Dr. Fleitas diagnosed McAllister with depressive disorder and wrote that there was a need to rule out an obsessive-compulsive disorder and post-traumatic stress disorder. R. 848. Dr. Fleitas noted that McAllister's ability to understand and remember simple instructions was good but his ability to interact appropriately with peers, the public, supervisors, and coworkers was significantly impaired. R. 849. Dr. Fleitas also wrote that McAllister was impaired in his ability to sustain attention and concentration for an extended period of time and to keep pace with coworkers and meet expectations. R. 849. The doctor assigned McAllister a "poor" prognosis. R. 849.

On March 16, 2016, McAllister saw Patricia McLaughlin, a nurse practitioner, with complaints of depression. R. 999. He noted that his symptoms had been ongoing for the past year and that he recently started having nightmares about being in a car accident. R. 999. He also admitted having recent thoughts about driving off a bridge, although he denied any current suicidal ideation. R. 1001. His affect was sad. R. 1001. His thought processes were not impaired, and he did not demonstrate any behavioral abnormalities. R. 1001. A physical examination showed that McAllister had tenderness and muscle spasms in his thoracic and lumbar spine, as well as pain in his left hip. R. 1001. McLaughlin diagnosed McAllister with major depressive disorder, anxiety disorder, post-traumatic stress disorder, low back pain, and hip pain. R. 1005. She prescribed Sertaline. R. 1005.

Two days later, McAllister had an appointment with Dr. Fleitas. R. 995. McAllister told the doctor that he was suffering from additional stress and was not sleeping well. R. 995. He recently had begun a disability case and was feeling more frustrated with

himself physically. R. 995. McAllister stated that he was having thoughts of death but did not plan to harm himself—rather, he was concerned about further deterioration of his physical condition. R. 995. Dr. Fleitas observed that McAllister's lack of sleep was escalating his anxiousness and his lack of energy. R. 995. She diagnosed McAllister with an adjustment disorder and encouraged him to continue taking mental health medications that had been prescribed by McLaughlin. R. 997.

The next month McAllister told McLaughlin that his Zoloft was not helping him. R. 975. His sleep still was poor and he was having "sweats all over." R. 975. McLaughlin advised McAllister to take Vitamin B12 to improve his energy and to try Lexapro for his mental health symptoms. R. 981. In June 2016, McAllister told McLaughlin that he continued to suffer from nightmares and was having "panic-like attacks." R. 968. He reported that his medications were not effective. R. 968.

During 2016, Plaintiff also continued to receive treatment for his physical impairments. In July 2016, he was treated at Fort Benning for lower back pain. R. 947. The pain had persisted for a couple of weeks and was not associated with any particular injury. R. 947. Examination of Plaintiff's back showed that he had some tenderness in his left flank. R. 949. Later that month Plaintiff also was treated for right elbow pain and tailbone discomfort. R. 962. A physical examination showed that Plaintiff continued to have tenderness in his elbow, shoulder, spine, and hip, with positive straight-leg raising and associated muscle spasms. R. 965. In November 2016, Plaintiff also sought treatment for left hip pain and was diagnosed with trochanteric bursitis. R. 901 & 907. An MRI showed evidence of osteophyte formation in Plaintiff's left hip. R. 887 & 899.

10

In December 2016, Plaintiff had an appointment with Dr. Fleitas for treatment of his depression and anxiety. R. 895. He reported some frustration regarding the progress of his disability case. R. 895. McAllister stated that he was not sleeping and was more frustrated and reactive. R. 895.

At the hearing before the ALJ, McAllister testified that he served in the Marine Corps from June 1994 through June 2015. R. 39. He stated that he left the military because his physical disabilities were holding him back and preventing him from earning any further promotions. R. 40. McAllister reported that his physical problems included neck pain, elbow pain, torn biceps, and a torn rotator cuff. R. 45–46. He noted that he continued to have weakness in his right arm. R. 46. He told the ALJ that he has problems using his right arm for gripping or for writing. R. 48. McAllister also stated that he has sharp pains in his back that radiate down to his knee. R. 49.

With respect to his mental health problems, McAllister testified that he has problems with concentration. R. 50. He noted that he has been diagnosed with depression and anxiety. R. 50. He observed that he had been waiting for his primary care doctor to refer him to a psychiatrist affiliated with the Department of Veterans Affairs. R. 51. He stated that he previously saw another psychiatrist through Tricare, but that he could no longer afford the co-pay for those visits. R. 51. McAllister stated that he lacked initiative and had little motivation to leave his room or to socialize with other people. R. 51–52. And he had a hard time remembering details unless he memorialized them in some way. R. 52.

## VI. ISSUES

1. Whether the ALJ offered adequate reasons for rejecting the opinion of Dr. Fleitas, a consulting physician?

2. Whether the ALJ properly evaluated Plaintiff's subjective complaints?

3. Whether the ALJ properly relied on VE testimony to determine Plaintiff could perform alternate light work?

## VII. ANALYSIS

### A. Dr. Fleitas' Opinion

Plaintiff argues that the ALJ erred because he failed to provide adequate reasons for rejecting the opinion of Dr. Fleitas, the consulting psychologist, that Plaintiff was "significantly impaired" in his ability to interact appropriately with peers, the public, and coworkers, and that he was limited in his abilities to maintain concentration for extended periods of time, keep pace with coworkers, and meet expectations in the workplace. R. 849. It is reversible error for an ALJ to fail to articulate the weight given to a non-treating physician's opinion or the grounds for discounting the opinion. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960 (11th Cir. 2015). However, the law does not require an ALJ to address every piece of evidence in an opinion. *See Newberry v. Comm'r Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (affirming even though the ALJ did not discuss a doctor's finding that Plaintiff would need to lie down at times throughout the workday).

With respect to the medical opinions expressed by Dr. Fleitas, the ALJ wrote that

> [t]he undersigned has considered the opinion of Dr. Fleitas as noted in her consultative evaluation report and has given this opinion partial weight. Dr. Fleitas' opinion is based in [sic] a one-time evaluation and is mostly based on the claimant's reports as to the severity of his symptoms. Additionally, Dr. Fleitas only reviewed the records from Columbus Medical in 2016.

R. 22. Specifically, with respect to Dr. Fleitas' opinion that Plaintiff was significantly impaired in his ability to interact appropriately with his peers, the public, and coworkers, the ALJ wrote that he discounted this opinion on the basis of the "limited mental health treatment and the fact that the claimant is currently enrolled in college," and because the non-examining medical consultant opined that Plaintiff had no specific limitation in this area. R. 19.

Furthermore, with respect to Dr. Fleitas' opinion that Plaintiff was limited in his ability to concentrate and to keep up with the pace of work, the ALJ noted that Dr. Fleitas recognized that this limitation primarily resulted from Plaintiff's physical impairments. R. 19. Indeed, the ALJ wrote that "the claimant has been treated conservatively for depression with routine follow up appointments and medications." R. 19. Additionally, the ALJ wrote that these alleged limitations were inconsistent with the fact that "claimant enrolled in college and was attempting to complete his degree in network engineering." R. 19.

After carefully reviewing the ALJ's opinion and the evidence as a whole, the court concludes that the ALJ clearly articulated the weight given to Dr. Fleitas' opinions and his reasons for discounting them. Specifically, the ALJ gave Dr. Fleitas' opinion "partial weight" but noted that her conclusions were based on Plaintiff's subjective statements. R. 22; *see Lacina v. Comm'r of Soc. Sec.,* 606 F. App'x 520, 528 (11th Cir. 2015) (discounting a physician's opinion where physician "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant"). Moreover, as recited above, the ALJ relied on Plaintiff's conservative treatment for depression as a

reason for discounting this opinion. R. 19. The law is clear that an ALJ may discount the opinion of any physician if objective medical signs and diagnostic testing do not support it or if the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Soc. Sec.,* 363 F. 3d 1155, 1158 (11th Cir. 2004). Accordingly, the ALJ did not err in evaluating the opinions of Dr. Fleitas.

**B. The ALJ's Evaluation of Plaintiff's Complaints**

Plaintiff testified at the hearing that he is unable to work due to chronic pain and migraine headaches, as the ALJ recognized. R. 21. The Social Security Regulations provide that a claimant's subjective complaints of pain cannot alone establish disability. Rather, the regulations describe additional objective evidence that permits a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote*, 67 F. 3d at 1560; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that it can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir.

1986); *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial evidence. If there is no such support, then the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In the instant action, the ALJ concluded:

The undersigned is impressed with the fact that the claimant testified at the hearing the he is unable to work due to chronic pain, and migraine headaches; however, his treatment records, even in 2016, show a high level of pain reported at a 3 on a scale of 10 where 10 is the most severe pain . . . In December of 2016, the claimant presented to Columbus Medical due to complaints of hip pain; however, it was noted that a magnetic resonance imaging (MRI) of the hip performed in 2008, was normal . . . Similarly, the claimant has alleged difficulty concentrating due to symptoms of depression; however, his diagnosis of depression was not noted until the later part of 2016. In 2016 the record shows that on multiple occasions his depression screen was noted as negative, which shows that at least at the time of the evaluation, he did not show any signs of depression . . . Additionally, despite his allegations, he reported to Dr. Fleitas being enrolled in college to complete a degree in network engineering, and that he was scheduled to graduate in March of 2014 . . . The undersigned finds significant to note that, at the hearing, when the undersigned asked the claimant how he spends his days, he did not mention the fact that he was attending school. The claimant also noted at the hearing that he purchased a cane and that he uses it at least two or three days a month[]; however, despite these allegations, he never mentioned the need for a cane or a level of severity that would require the use of a cane.

R. 21–22. Accordingly, the court concludes that the ALJ appropriately articulated reasons for discounting Plaintiff's subjective complaints of pain. Furthermore, the court's own independent review of the record confirms that the ALJ's reasons are supported by substantial evidence. Thus, the court concludes that the ALJ did not err in discounting

15

Plaintiff's subjective complaints.

## C. The ALJ's Reliance on VE Testimony

Plaintiff argues that the ALJ erred when he concluded that Plaintiff has the residual functional capacity to perform light work with limitations, including the need or additional breaks and reminders due to him being "off task at least 10% of the time." R. 20. Specifically, Plaintiff argues that the ambiguous term "at least" suggests that McAllister could be off task more than ten percent of the time, which according to the VE would prevent him from being able to sustain competitive employment. R. 64. While the court recognizes that the ALJ used the term "at least" in his decision (R. 20), an independent review of the record confirms that the ALJ posed a hypothetical to the VE with limitations including being off task "up to" ten percent of the workday. R. 61–64. Specifically, the ALJ questioned:

> Q. And what if the person—any hypothetical that produced jobs, if I added to the hypothetical that they, at the work station working but not accomplishing everything they're supposed to be accomplishing. *So they're off task up to about 10 percent of the work day.* How does that impact the hypotheticals that produced jobs?

R. 63–64 (emphasis added). The ALJ responded:

> A. Being off task up to 10 percent of the time is usually acceptable; anything over that would not be acceptable.

R. 64. Accordingly, the ALJ appropriately relied on the VE testimony despite the misstatement in his decision.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the

Court AFFIRMS the Commissioner's decision.

A separate judgment is entered herewith.

DONE this 2nd day of April, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE